UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANIEL MOORE,

       Plaintiff,

-v-

CITY OF NEW YORK, NYC HEALTH
+ HOSPITAL, CAPTAIN AYANNA
ROBERTSON, C.O. WILLIAMS, C.O.
DIAS, C.O. JAMES, C.O. MORRIS, C.O.
RAYSOR, WARDEN CAROLYN
SAUNDERS, DEPUTY WARDEN
DELIA VAZ, and NATASHA FRAZIER,

       Defendants.

18-CV-496 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

 Plaintiff Daniel Moore brings this action *pro se* against the City of New York ("the City") and NYC Health + Hospital ("H&H"), along with a group of nine individuals (collectively, "Defendants"). Moore alleges that Defendants were deliberately indifferent to his medical needs, in violation of the Fourteenth Amendment. (Dkt. No. 26 at 2, 11.) Defendants now move to dismiss the operative complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Dkt. No. 39.)[1] For the reasons that follow, Defendants' motion is granted.

---

[1] Although the individual Defendants have not yet appeared or responded to the Complaint, the City and H&H represent that "the arguments in [the memorandum supporting dismissal] address the claims made against them," and request that "any relief granted to the City and H&H be extended to the Individual Defendants." (Dkt. No. 40 at 1 n.2.) The Court deems this statement sufficient to put Moore on notice that the pending motion could result in the dismissal of his claims against all Defendants under Rule 12(b)(6). *Cf. Grant v. Cty. of Erie*, 542 F. App'x 21, 24 (2d Cir. 2013) ("[A] district court may dismiss an action *sua sponte* for failure to state a claim so long as the plaintiff is given notice of the grounds for dismissal and an opportunity to be heard."). And Moore was given, and took advantage of, the opportunity to be heard in response to the potential dismissal of his claims. (Dkt. No. 44.)

**I.      Background**

The following facts are drawn from the operative complaint, as well as the opposition to the motion to dismiss, and are presumed true for the purpose of this motion. *See Feelings v. Stukes*, No. 15 Civ. 1889, 2016 WL 2993202, at *1 (S.D.N.Y. May 23, 2016) (noting that, under the "duty to liberally construe *pro se* pleadings," courts may credit allegations appearing in *pro se* opposition papers).[2]

Plaintiff Daniel Moore is an inmate at the Five Point Correctional Facility in Romulus, New York. (Dkt. No. 46.) Moore suffers from medical issues involving his heart, and due to the fact that his left leg contains a metal rod and screws and is shorter than his right leg. (Dkt. No. 26 ("Compl.") at 7–8.) During Moore's pretrial detention at the Otis Bantum Correctional Center ("OBCC") on Rikers Island, Moore alleges that his constitutional and statutory rights were violated in connection with the failure to provide him adequate medical assistance. (Compl. at 2, 7–11; *see* Dkt. No. 40 at 5 n.4.)[3]

---

[2] Along with his affidavit opposing the motion to dismiss (Dkt. No. 44 at 1–2)—which the Court construes as an opposition brief—Moore also submits an affidavit from John Hyde, another detainee at OBCC (Dkt. No. 44 at 3). The Court declines to consider the Hyde affidavit in deciding Defendants' motion.

If "matters outside the pleadings are presented to and not excluded by the court" on a Rule 12(b)(6) motion, "the motion must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). "However, if extrinsic evidence submitted on a motion to dismiss is deemed part of the pleadings, it may be considered in deciding the motion." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 59 (S.D.N.Y. 2010).

The Hyde affidavit was not "(1) attached to the complaint; (2) incorporated into the complaint by reference; or (3) integral to the complaint," *id.* at 60, and thus the Court does not treat it as part of the pleadings in deciding this motion to dismiss. Furthermore, the Court "declines to convert the instant motion into one for summary judgment since discovery has not yet commenced." *Id.* at 61.

[3] The Complaint does not specify Moore's status at the time of the events alleged, though Defendants allege that Moore was a pretrial detainee at the time in question, according to publicly available state records. (Dkt. No. 40 at 5 n.4.) Moore does not contest this assertion in

2

On June 30, 2017, Moore arrived at OBCC, which is managed by the New York City Department of Correction. (Compl. at 7.) Soon thereafter, Moore was seen by the medical staff at OBCC, who are employed by H&H. (*Id.*) The medical staff noted the problems with Moore's leg and issued Moore a permit for a walking cane. (*Id.*) On August 11, 2017, Moore's cane was allegedly taken from him without explanation, and not returned until November 17, 2017. (Compl. at 7–8, 14.)

Also at Moore's initial visit with the medical staff, they indicated that Moore would be given a "shoe lift," also known as an orthopedic shoe insert, to treat the issues with his left leg. (Compl. at 7; *see* Dkt. No. 40 at 1.) Moore alleges, however, that despite complaining about "the pain in [his] legs and lower back" to the medical staff, it took "almost a whole year" for him to be given a pair of custom orthopedic shoes, which he finally received on June 19, 2018. (Compl. at 7, 11; Dkt. No. 44 at 4.) The delay in obtaining the custom orthopedic shoes, Moore asserts, is due to the failure of Natasha Frazer[4]—the Assistant Coordinator of H&H—to actively supervise staff at OBCC. (Compl. at 8.)

Finally, Moore alleges that there have been issues with the administration of his heart medication. (Compl. at 8; *see* Compl. at 20–23.) According to Moore, the normal procedure for the administration of medication at OBCC involves the correctional officers producing inmates to the medical staff for treatment, or escorting the medical staff to detention units where treatment is required. (Compl. at 8–9.) Moore alleges, however, that the correctional officers

---

his opposition papers. (*See* Dkt. No. 44.) Therefore, the Court takes judicial notice of the fact of Moore's status as a pretrial detainee at the time of the relevant events, consistent with accepted practice in this District. *See, e.g.*, *Taylor v. City of New York*, No. 16 Civ. 7857, 2018 WL 1737626, at *11 n.10 (S.D.N.Y. Mar. 27, 2018); *Thomas v. Westchester Cty.*, No. 12 Civ. 6718, 2013 WL 3357171, at *3 n.9 (S.D.N.Y. July 3, 2013).

[4] Although her last name is spelled on the Docket as "Frazier," the Court will use the spelling "Frazer," consistent with the Defendants' brief.

3

assigned to the medical clinic at OBCC—Officers Dias, James, Raysor, Morris, and Williams—as well as their area supervisor, Captain Robertson, failed to call Moore to receive his medication and failed to otherwise insure that the required procedures were employed for Moore to receive his medication in a timely manner. (Compl. at 9.) Furthermore, Moore alleges that the medical staff have been "falsifying medical documentation with regards to the time that [his] medication is actually given to [him]," again due to the inadequate supervision of Frazer. (Compl. at 8.) The denial of Moore's heart medication is alleged to have occurred "in excess of 10 times." (Dkt. No. 44 at 1.) In addition, Moore alleges that the heart medication was taken from him during an institutional search on October 24, 2017, and never returned. (Compl. at 8, 16.)

Moore filed a grievance complaint on November 17, 2017, in connection with the missing walking cane and promised orthopedic insert. (Compl. at 10, 13.) And Moore further alleges that he has "filed various grievances to address the negligence" of the corrections officers and medical staff. (Dkt. No. 44 at 1.) But according to Moore, Captain Ayanna Robertson and the officer in charge of the medical clinic area—Deputy Warden of Programs Delia Vaz—failed to investigate his complaint or even respond to Moore. (Compl. at 10.) Nor did the Warden of OBCC at the time—Warden Carolyn Saunders—respond to the grievance complaint or remedy the failures of the medical staff and correctional officers. (*Id.*)

Moore initiated this action *pro se* on January 18, 2018 (Dkt. No. 2), and filed the operative fifth amended complaint ("Complaint") on September 19, 2018 (Dkt. No. 26). The Complaint names as Defendants the City; H&H; Warden Saunders; Deputy Warden Vaz; Captain Robertson; Corrections Officers Dias, James, Raysor, Morris, and Williams; and the Assistant Coordinator of H&H, Frazer. (Compl. at 4–6.) Moore asserts violations of his Fourteenth Amendment rights and statutory rights under 42 U.S.C. § 6010, and seeks damages

from Defendants. (Compl. at 2, 11.) On November 21, 2018, the City and H&H moved to dismiss the Complaint in its entirety under Rule 12(b)(6). (Dkt. No. 39.) In response, Moore submitted an affidavit, which the Court construes as a brief in opposition to dismissal (Dkt. No. 44), and the motion is now ready for resolution.

## II. Legal Standard

In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept as true all well-pleaded factual allegations in the complaint and "draw[] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006) (citation omitted).

Moreover, courts must afford *pro se* plaintiffs "special solicitude" before granting motions to dismiss. *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). "A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Therefore, courts interpret a *pro se* plaintiff's pleadings "to raise the strongest arguments they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (citation omitted). "Even in a *pro se* case, however, 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory

5

statements, do not suffice.'" *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)).

**III. Discussion**

Defendants raise four arguments in support of their motion to dismiss, involving: (1) exhaustion; (2) the merits of Moore's constitutional claims;[5] (3) the personal involvement of individual Defendants; and (4) municipal liability. Although exhaustion is not a proper ground for dismissal of the claims at this stage in the litigation, dismissal is nonetheless appropriate on the merits.

**A. Exhaustion**

As a defense to all claims asserted by Moore, Defendants argue that he failed to properly exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("the PLRA"), 42 U.S.C. § 1997e(a). (Dkt. No. 40 at 11–15.)

However, "failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Therefore, "[t]he only circumstance in which it is appropriate to dismiss a complaint on nonexhaustion grounds is when it is apparent from the face of the

---

[5] In addition to his Fourteenth Amendment rights, Moore briefly claims violations of his "rights under 42 U.S.C.A. § 6010, Developmentally Disabled Assistance & Bill of Rights Act of 1975." (Compl. at 2.) But Moore does not say anything else about these asserted statutory rights—or how they are implicated by the facts alleged—in his Complaint or opposition affidavit. (*See* Dkt. Nos. 26, 44.) Nor do Defendants mention these statutory rights in their brief. (*See* Dkt. 40.)

The statute invoked has been amended multiple times, such that the specific codified provision under which Moore seeks to bring a claim—42 U.S.C. § 6010—is no longer in effect. Furthermore, the Supreme Court has previously held that this statutory provision "did not create rights enforceable under § 1983." *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 510 (1990) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1 (1981)). Accordingly, Moore has failed to state a claim for violation of any statutory rights under 42 U.S.C. § 6010.

complaint that the plaintiff failed to exhaust his administrative remedies." *Randle v. Alexander*, 960 F. Supp. 2d 457, 483 (S.D.N.Y. 2013).

Here, Moore's Complaint alleges that he filed a grievance on November 17, 2017, and attaches the grievance form as an exhibit. (Compl. at 10, 13.) Furthermore, in his affidavit opposing the motion to dismiss, Moore attests that he has "filed various grievances to address the negligence by Department of Corrections staff . . . as well as the medical staff," and that he has "exhausted such grievance remedies by appealing [his] complaints to the facility's commanding officer . . . as well as . . . [the] Central Office Review Committee." (Dkt. No. 44 at 1.)

On the basis of these allegations, the Court concludes that it is not apparent from the face of Moore's submissions that he failed to exhaust his administrative remedies, and thus Defendants' exhaustion argument fails.

### B. Claims Against Individual Defendants

Moore asserts that nine staff members and supervisors at OBCC were deliberately indifferent to his medical needs in violation of his Fourteenth Amendment rights.[6] (Compl. at 2, 4–6.) Moore alleges that he has suffered from two discrete medical issues at OBCC, which the individual Defendants have unlawfully disregarded: first, the infliction of leg and lower back pain caused by the absence of a cane and the delay in receiving an orthopedic shoe insert; and second, the failure to properly administer his heart medication. (Compl. at 7–11.)

The Eighth Amendment forbids "'deliberate indifference to serious medical needs of prisoners.'" *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle*, 429 U.S. at 104). Similarly, as relevant here, the Due Process Clause of the

---

[6] Though the Complaint does not mention 42 U.S.C. § 1983, the Court understands Moore to be asserting claims under this provision for the deprivation of his constitutional rights.

7

Fourteenth Amendment prohibits deliberate indifference to the medical needs of pretrial detainees in state custody. *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009), *overruled on other grounds by Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017).

Significantly, however, "not every lapse in medical care is a constitutional wrong." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). "In order for an inmate to state a claim of constitutional deprivation with regard to his access to medical care during pre-trial detention, the inmate must demonstrate that his medical needs were objectively 'sufficiently serious,' and that the individual to be charged with the violation was aware of, and deliberately indifferent to, those needs." *Ceparano v. Suffolk Cnty. Dep't of Health*, 485 F. App'x 505, 507 (2d Cir. 2012). Moore must sufficiently allege both of these prongs in order for his claims against the individual Defendants for deliberate indifference to medical needs to survive the motion to dismiss.

### 1. Leg and Back Pain

First, Moore asserts that the individual Defendants were deliberately indifferent to the leg and back pain caused by the delay in providing him with an orthopedic shoe insert and exacerbated by the deprivation of his cane. (Compl. at 11.) Defendants respond that Moore has not adequately pleaded either prong of the deliberate indifference standard with respect to this medical issue. (Dkt. No. 40 at 6–7, 9–10.) The Court need not address whether Moore's pain and the delay in treatment were objectively sufficiently serious, because Moore has failed to adequately plead that the individual Defendants were deliberately indifferent to his needs.

To satisfy this second prong for a claim of deliberate indifference to the needs of a pretrial detainee under the Fourteenth Amendment—the "knowledge prong"—the plaintiff must plausibly allege "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the

8

condition posed an excessive risk to health or safety." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). And because Moore is asserting claims against all nine individual Defendants in their individual capacities (Compl. at 11), "the liability of each therefore depends on a showing that he or she acted with deliberate indifference," *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).

Defendants argue that Moore has not adequately pleaded deliberate indifference to the leg and back pain, because he has not adequately "alleged that any of the Individual Defendants knew, or should have known, of [his] medical conditions." (Dkt. No. 40 at 9.) The Court agrees.

According to Moore, he complained "of the pain in [his] legs and lower back to the doctors and medical staff" at OBCC. (Compl. at 7.) On September 6, 2017, his attorney sent a letter to the "Warden" at OBCC, informing the Warden that Moore was experiencing pain due to the lack of a cane or "shoe lift," and requesting assistance with this issue. (Compl. at 14.) Additionally, Moore filed a grievance on November 17, 2017, which specifically mentions experiencing "extreme pain" in connection with the lack of cane and "shoe lift." (Compl. at 13.) But according to Moore, Deputy Warden Vaz, Captain Robertson, and Warden Saunders failed to investigate his grievance or issue any response. (Compl. at 10.)

At no point in his Compliant or opposition affidavit, however, does Moore allege that he complained directly to H&H Assistant Coordinator Frazer or any of the Corrections Officer Defendants about the pain, or the lack of cane or orthopedic insert. Nor does he allege any facts that would allow the Court to infer that these individuals knew, or should have known, about his condition and its severity. Accordingly, Moore has not adequately alleged that Frazer, Officer Dias, Officer James, Officer Raysor, Officer Morris, or Officer Williams was deliberately indifferent to his medical needs regarding the leg and back pain.

The alleged knowledge and indifference of Deputy Warden Vaz, Captain Robertson, and Warden Saunders present a closer question. The Complaint alleges that these supervisor Defendants were in receipt of the November 2017 grievance, and thus had constructive notice of Moore's leg and back pain. In assessing whether this notice is sufficient to establish that these individuals "knew, or should have known" about the pain Moore was suffering but "recklessly failed to act," *Darnell*, 849 F.3d at 35, it is helpful to consider the doctrine of personal involvement.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Shomo v. City of New York*, 579 F.3d 176, 184 (2d Cir. 2009). To adequately plead "[t]he personal involvement of a supervisory defendant" at the motion to dismiss stage, a plaintiff must plausibly allege that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

As the Second Circuit has recognized, the knowledge prong of a detainee's disregard of medical needs claim and the personal involvement inquiry can be interrelated. *See Lewis v. Cunningham*, 483 F. App'x 617, 619 (2d Cir. 2012); *Hernandez*, 341 F.3d at 148 (reasoning that the fact that personal involvement could not be established under *Colon* for a defendant who received—but did not personally investigate or act on—prisoner grievances supported the conclusion that the defendant was not "deliberately indifferent" to medical needs).

And courts in this Circuit have repeatedly held that "as a matter of law, a defendant's mere receipt of a letter or grievance, without personally investigating or acting [thereon], is insufficient to establish personal involvement." *Alvarado v. Westchester Cty.*, 22 F. Supp. 3d 208, 215 (S.D.N.Y. 2014) (alteration in original) (internal quotation marks omitted); *see also Goris v. Breslin*, 402 F. App'x 582, 584 (2d Cir. 2010); *Roberts v. City of New York*, No. 14 Civ. 5198, 2016 WL 4146135, at *7 (S.D.N.Y. Aug. 2, 2016); *Thompson v. Pallito*, 949 F. Supp. 2d 558, 575 (D. Vt. 2013) ("The district courts of this circuit appear to be in unanimous agreement that a supervisory official having received (and ignored) a letter from an inmate alleging unconstitutional conduct does not, without more, give rise to personal involvement on the part of that official.").

Moreover, at least three courts have concluded that allegations that defendants were sent a grievance complaint are alone insufficient to establish both the personal involvement of the recipients and the knowledge prong of a deliberate indifference claim. *See Dawkins v. Copeland*, No. 17 Civ. 9926, 2019 WL 1437049, at *8 (S.D.N.Y. Mar. 31, 2019) (holding that the allegation of defendants' awareness of the challenged conduct—due to the filing of a grievance complaint that defendants ignored—"is insufficient to properly allege personal involvement and deliberate indifference"); *Thompson*, 949 F. Supp. 2d at 579 ("Just as [being sent a complaint letter to which a defendant did not respond] does not establish [a defendant's] personal involvement, such a letter also cannot establish his deliberate indifference."); *Ward v. Capra*, No. 16 Civ. 6533, 2018 WL 1578398, at *6 (S.D.N.Y. Mar. 29, 2018) ("Plaintiff filling out a grievance and appeal regarding the health care he was being provided does not satisfy [the knowledge prong of a deliberate indifference claim].").

As these courts have explained, an allegation that a plaintiff "filed a grievance" is not the same as alleging that any particular defendant "received or read his grievance," and thus does not establish that particular defendants "knew or should have known about" plaintiff's medical condition. *Dawkins*, 2019 WL 1437049, at *8. In other words, alleging that a defendant was merely sent a grievance does not plausibly establish that the defendant "was made aware of and intentionally disregarded a risk to [plaintiff's] health." *Thompson*, 949 F. Supp. 2d at 579. And because being sent a grievance does not give rise to deliberate indifference under the second or fifth *Colon* factors, *see* 58 F.3d at 873, it also fails to satisfy the knowledge prong of a deliberate indifference claim.

The Court adopts the same reasoning here. Where a plaintiff alleges that a particular defendant's involvement in an alleged constitutional deprivation is limited to being sent a grievance or letter—and does not allege that the defendant personally investigated or acted on the grievance—those allegations are not sufficient to establish either the defendant's personal involvement or deliberate indifference to the plaintiff's medical needs.

In this case, Moore alleges that he filed his November 2017 "grievance by placing a copy . . . in a 'grievance box' and the 'wardens' box," but that Deputy Warden Vaz and Captain Robertson "failed to investigate [his] grievance," and Vaz, Robertson, and Warden Saunders "never responded to [him] in writing or person and have allowed" the neglect to continue. (Compl. at 10.) Moore further alleges that, of multiple grievances filed that were appealed to Saunders, "[n]o response was ever received." (Dkt. No. 44 at 1.)

The gravamen of these allegations is that Moore submitted grievances that the three supervisors should have received, but that they did not investigate or otherwise respond to his

submissions. As explained above, such allegations are insufficient to establish either the personal involvement or the deliberate indifference of Vaz, Robertson, and Saunders.

In conclusion, Moore has failed to adequately plead the knowledge prong of his leg-and-back-pain claims against any of the individual Defendants. The claims asserted against the individual Defendants for indifference to his leg and back pain are thus dismissed.

### 2. Heart Medication

Moore also alleges deliberate indifference to the proper administration of his heart medication. (Compl. at 8.) The Court need not address whether this issue was "objectively 'sufficiently serious,'" however, because Moore has again failed to sufficiently allege that the Individual Defendants were "aware of, and deliberately indifferent to," the alleged issues regarding the administration of his medication. *Ceparano*, 485 F. App'x at 507.

Defendants argue that Moore has not adequately pleaded deliberate indifference to the missed heart medication, because he "does not allege that any of [the individual] Defendants were aware or should have been aware [of] any risk of harm that results from the . . . missed doses of medication," or "acted recklessly disregarding" such risk. (Dkt. No. 40 at 10.) The Court agrees, and addresses below Moore's allegations of deliberate indifference as to the various groups of individual Defendants.

Moore alleges that the five Officer Defendants have failed to ensure that he received his medication on schedule as prescribed, by either failing to bring him to the medical clinic or failing to escort medical staff to Moore's unit. (Compl. at 9.) But Moore does not allege any facts supporting the inference that these individuals "knew, or should have known, that the" interruption in receiving his heart medication "posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. The Complaint does not reference whether Moore complained to the

13

Officer Defendants about the disruption in receiving his medication or told them of the risks attendant to missed doses. Moreover, Moore alleges that the disruptions to his medication regimen occur when OBCC is on "lockdown" (Dkt. No. 44 at 1), suggesting that the failure to ensure his receipt of medication is born out of disruptions to the operation of the facility as a whole, rather than reckless indifference to Moore's needs.

As for H&H Assistant Coordinator Frazer, Moore alleges that she "has not been actively supervising [the medical] staff," resulting in disruptions to his receipt of medication. (Compl. at 8.) But the Complaint does not adequately plead that Frazer knew, or should have known, about Moore's heart medication and the disruptions he experienced, or had any way of knowing that the disruptions posed an excessive risk to his health and yet recklessly failed to act.

With respect to Deputy Warden Vaz and Captain Robertson, the Complaint alleges that they were aware of the November 2017 grievance. (Compl. at 10.) But that grievance document does not specifically reference any issues with the administration of Moore's heart medication. (*See* Compl. at 13.) And the Complaint contains no additional allegations regarding the knowledge or reckless indifference of these supervisors as to the heart medication.

Finally, Moore alleges that he "filed various grievances" regarding "the negligence by Department of Corrections staff . . . at OBCC as well as the medical staff" which were appealed to Warden Saunders. (Dkt. No. 44 at 1.) But Moore does not allege any details about these other "grievances," such as whether they informed Saunders of the nature of the medication or the severity of the risk to his health posed by the disruption in administration. And as explained above, the submission of a grievance alone is insufficient to establish personal involvement or the knowledge prong of a deliberate indifference claim.

Ultimately, the Court concludes that Moore has not plausibly alleged that any of the individual Defendants were deliberately indifferent to the risks he faced from the improper administration of his heart medication. Accordingly, the claims against Frazer, Officer Dias, Officer James, Officer Raysor, Officer Morris, Officer Williams, Deputy Warden Vaz, Captain Robertson, and Warden Saunders are dismissed to the extent they are premised on deliberate indifference to the improper administration of Moore's heart medication.

### C. Municipal Liability

Moore also asserts claims against the City and H&H. (Compl. at 1.) In order to survive a motion to dismiss on these claims, Moore must properly allege municipal liability. *See Mejia v. N.Y.C. Health & Hosps. Corp.*, No. 16 Civ. 9706, 2018 WL 3442977, at *12 (S.D.N.Y. July 17, 2018) (noting that H&H is subject to municipal liability as a public benefit corporation).

Significantly, however, "a prerequisite to municipal liability under *Monell* is an underlying constitutional violation by a state actor." *Dawkins*, 2019 WL 1437049, at *8 (citation omitted). Because Moore's Complaint fails to state any constitutional deprivation by the individual Defendants, his *Monell* claims against the City and H&H are dismissed.

## IV. Leave to Amend

Under Second Circuit precedent, "[a] *pro se* complaint should not [be] dismiss[ed] without [the Court's] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (alterations in original) (quoting *Chavis*, 618 F.3d at 170). "[R]eading the pro se complaint and opposition papers liberally" in this case, the Court "cannot conclude that amendment would be futile." *Id.* Accordingly, the Court grants Moore an opportunity to amend the complaint, provided that he does so by July 26, 2019.

## V. Conclusion

For the foregoing reasons, the City's motion to dismiss is GRANTED.

Moore is directed to file an amended complaint by July 26, 2019. If Moore fails to do so within the time allotted, and cannot show good cause to excuse such failure, this case will be closed.

The Clerk of Court is directed to close the motion at Docket Number 39.

SO ORDERED.

Dated: June 26, 2019
       New York, New York

                                                J. PAUL OETKEN
                                                United States District Judge

*COPY MAILED TO PRO SE PARTY BY CHAMBERS*