USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/7/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANIEL MOORE,

                                    Plaintiff,

          -against-

NYC HEALTH + HOSPITAL, et al.,

                                    Defendants.

18-CV-0496 (JPO) (KHP)

**OPINION AND ORDER ON
MOTION TO VACATE
CERTIFICATE OF DEFAULT**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE:**

This action is brought by Plaintiff Daniel Moore ("Plaintiff") against Defendant

Corrections Officer Jayvon Jones ("Defendant Jones") pursuant to 42 U.S.C. § 1983 for claims of

deliberate indifference to Plaintiff's medical needs.  Before the Court is Defendant Jones'

motion to vacate the certificate of default (ECF No. 92).  For the reasons stated below,

Defendant Jones' motion is GRANTED.

## BACKGROUND

Plaintiff commenced this action on January 18, 2018 alleging that his constitutional and

statutory rights were violated while he was a pre-trial detainee at the Otis Bantum Correctional

Facility ("OBCC") at Rikers Island.  The crux of Plaintiff's claims involved allegations that medical

staff and corrections officers at OBCC showed a deliberate indifference to his medical needs

while he was detained at OBCC, including by confiscating medically necessary equipment and

failing to provide medication.  *See Moore v. City of New York*, 2020 WL 4547223, at *2-3

(S.D.N.Y. Aug. 6, 2020) (recounting the allegations in Plaintiff's sixth amendment complaint).

Plaintiff filed several iterations of the complaint, and on August 28, 2019, he filed a sixth

amended complaint that named as defendants the City of New York, NYC Health + Hospital, and

1

eight individuals including Defendant Jones.  As to Defendant Jones, the complaint alleged that he confiscated Plaintiff's medically issued cane without justification and failed to return it for six months causing Plaintiff intense leg-related pain.  *Id.* at *2, 6-7.  Plaintiff also alleged that Defendant Jones called him ableist slurs such as "cripple;" and warned him to "stop complaining" to medical staff or he would suffer "problems."  *Id.*

On November 12, 2019, the New York City Law Department ("Law Department") moved to dismiss the sixth amended complaint against all defendants.  (ECF No. 54.)  At that time, the Law Department did not represent Defendant Jones, but it nonetheless argued for dismissal of the claims against Defendant Jones as a matter of law.

On August 6, 2020, the Honorable J. Paul Oetken issued an Opinion and Order dismissing all of Plaintiff's claims except the claim that Defendant Jones was deliberately indifferent to Plaintiff's leg-related pain.  *Moore*, 2020 WL 4547223, at *6-7.  Because Defendant Jones had not appeared in the case, Judge Oetken directed the Law Department to inform the Court within 30 days whether it intended to represent Defendant Jones.  *Id.*

Over the course of the next few weeks, the Law Department made numerous attempts to contact Defendant Jones but it was not able to reach him.  On October 8, 2020, having not heard back from Defendant Jones, the Law Department informed the Court that it was not representing him.  (ECF No. 63.)  Accordingly, the Court executed an order to effect service on Defendant Jones through the U.S. Marshall Service, and Defendant Jones was served by a U.S. Marshall at his home on March 23, 2021.  (ECF No. 68.)

After Defendant Jones was served, the Law Department again tried to reach him, including by sending mail to the same address at which Defendant Jones accepted service.

However, Defendant Jones did not respond to the Law Department's efforts, nor did he make an appearance in the action or respond to the complaint.  On September 13, 2021, the Law Department submitted a letter to the Court stating that it had made additional attempts to contact Defendant Jones, but received no response from Defendant Jones, and reaffirmed that it would not be representing him.  (ECF No. 78.)

On September 16, 2021, Plaintiff requested permission to move for default against Defendant Jones, which the Court approved in an order dated January 31, 2022.  (ECF No. 82.) The Court advised Plaintiff in the order that if he wanted the Court to issue a default judgment and award damages, he would need to separately file a motion requesting a default judgment and including proof of damages.  (*Id*.)  On February 2, 2022, the Clerk of the Court issued a Certificate of Default as to Defendant Jones.  (ECF No. 83.)

The Court's order at ECF No. 82 and the Clerk's Certificate of Default at ECF No. 83 were mailed to Plaintiff at Sing Sing Correctional Facility, where the Court understood he was being detained.  It subsequently came to the Court's attention that Plaintiff had been moved to Green Haven Correctional Facility and may not have received copies of the filings at ECF Nos. 82 and 83.  Therefore, on August 17, 2022, the Court directed the Clerk of the Court to mail copies of those documents to Plaintiff's new address and the Court set a deadline of November 17, 2022 for Plaintiff to file a letter motion requesting default judgment.  (ECF No. 84.)  Plaintiff filed a motion requesting a default judgment on September 22, 2022.  (ECF No. 85.)

On December 20, 2022, the Law Department made an appearance on behalf of Defendant Jones and filed a letter requesting an extension of time nunc pro tunc until January 20, 2023 for Defendant Jones to answer the complaint.  (ECF No. 90.)  Because a Certificate of

Default had already issued, the Court denied this request without prejudice and directed Defendant Jones to file a motion to vacate the Certificate of Default.  Defendant Jones filed a motion to vacate the Certificate of Default on January 20, 2023.  (ECF No. 92.)

## DISCUSSION

Rule 55 of the Federal Rules of Civil Procedure provides plaintiffs with a "two-step process" for obtaining a default judgment against a defendant that has failed to defend.  *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).  The first step is to obtain a Certificate of Default from the Clerk of the Court, and the next step is to move the court for a Default Judgment.  Fed. R. Civ. P. 55(a)-(b).

A court may set aside a Certificate of Default or a Default Judgment for "good cause."  Fed. R. Civ. P. 55(c).  Courts consider three criteria to determine whether "good cause" exists: (1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party.  *Green*, 420 F.3d at 104.  The standard for setting aside a Certificate of Default is more lenient than that for vacating a Default Judgment, but the above factors are the same for both.  *King v. Regen Med. Mgmt., LLC*, 2021 WL 4066598, at *1 (S.D.N.Y. Sept. 7, 2021) (citations omitted).  No single factor is dispositive.  *Murray Eng'g, P.C. v. Windermere Properties LLC*, 2013 WL 1809637, at *4 (S.D.N.Y. Apr. 30, 2013).  In weighing the factors, the courts should keep in mind that defaults are disfavored, and the Second Circuit has expressed a "strong preference for resolving disputes on the merits."  *Green*, 420 F.3d at 104 (quotation marks and citation omitted).  The court should also resolve doubts in favor of the defaulting party.  *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

Here, the Plaintiff has obtained a Certificate of Default but has not yet obtained a Default Judgment. Accordingly, the Court weighs the "good cause" factors under the more lenient standard.

### a. Willfulness

"Willfulness" in the context of a default judgment requires "something more than mere negligence," such as "egregious or deliberate conduct." *Green*, 420 F.3d at 108 (citation omitted). However, the default need not have occurred due to bad faith. *Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 631, 635 (2d Cir. 1998). "Conduct may be found to be willful where it is egregious, not satisfactorily explained, or is rationalized by flimsy excuse." *Aetna Life Ins. Co. v. Licht*, 2004 WL 2389824, at *4 (S.D.N.Y. Oct. 25, 2004) (citation omitted).

The question of willfulness does not depend only on the conduct of a defendant's counsel, but on the conduct of the defendant himself. *S.E.C. v. McNulty*, 137 F.3d 732, 738-40 (2d Cir. 1998) (finding the defendant acted willfully where he made no effort to get in touch with his lawyer prior to the default being entered, and explaining that regardless of conduct by counsel, the party himself must make a showing of diligence). Regardless of the efforts of the Law Department, Defendant Jones must show that he did not act willfully in failing to respond to the complaint.

Here, Defendant was served on March 23, 2021 at his home, but he did not make an appearance in this action until December 20, 2022 – almost two years later. Prior to and during that almost two-year period, the Law Department made every effort to reach Defendant Jones, including by sending mail to the same home address at which Defendant Jones received service. However, the Law Department did not hear back from Defendant Jones, nor did Defendant

Jones hire another lawyer or attempt to respond to the Complaint pro se.  In fact, Defendant

Jones appears to have made no effort to retain counsel or otherwise respond to the Complaint

for almost two years after being served.

Defendant Jones argues that his default was not willful because the Law Department

made "diligent attempts" to locate him, but it was not able to do so because it had an incorrect

telephone number for him and its attempts to reach him at his address were not successful.

Defendant Jones argues he should not "bear the fault of an entry of default against him due to

circumstances outside of his control, and based upon outdated contact information and [the

Law Department's] uncertainty concerning the best method to contact him."  (ECF No. 93.)  This

argument is unavailing because Defendant Jones' default was entirely within his own control,

and any efforts to reach him by the Law Department, which did not represent him at the time

of his default, are a red herring.

Defendant Jones has provided no explanation for his own failure to respond to the

complaint or otherwise make a timely appearance in this action.  He does not contest the

manner of service nor does he argue that he was not aware of the lawsuit against him or that

he misunderstood his obligation to respond.  He also has not provided any explanation for his

own failure to diligently contact the Law Department or other counsel after being served.  Even

if Defendant Jones did not receive the Law Department's calls, emails, and mail, and even if he

was unable to secure other counsel, he has provided no excuse for failing to respond to the

complaint as a pro se litigant.

Although the Court should resolve any doubts in Defendant Jones's favor at this

juncture, Defendant Jones's lack of explanation leaves no doubt that his conduct was more

than merely negligent, but was deliberate. *Gonzaga Cortez v. Hang Lin*, 2019 WL 4256363, at

*4 (S.D.N.Y. Sept. 9, 2019) ("[A] lack of satisfactory explanation indicates the default was

deliberate."); *Frost Belt Int'l Recording Enters., v. Cold Chillin' Records*, 758 F.Supp. 131, 136

(S.D.N.Y. 1990) (defendant's failure to explain the default precluded a finding of excusable

neglect). The Court must therefore conclude that Defendant's failure to respond to the Law

Department's efforts to reach him, including by mail sent to his home, as well as his failure to

otherwise respond to the action against him, amounts to willfulness. *Guggenheim Cap., LLC

v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013) (default was willful where the defendant did not

deny that he received the complaint and did not contend that his noncompliance was due to

circumstances beyond his control); *Todtman, Nachamie, Spizz & Johns, P.C. v. Ashraf*, 316 Fed.

Appx. 51 (2d Cir. 2009) (default is considered willful when a defendant "simply ignores a

complaint without action"); *Mason Tenders Dist. Council of Greater New York v. WTC

Contracting, Inc.*, 2011 WL 4348152, at *2 (S.D.N.Y. Sept. 16, 2011) (default was willful where

the defendant had no "credible explanation" for why it did not read its mail and appear in the

action).

  Accordingly, this factor weighs against vacating the Certificate of Default.

  **b. Meritorious Defense**

  "A defense is meritorious if it is good at law so as to give the factfinder some

determination to make." *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (citation

omitted). "While a defendant must do more than offer conclusory assertions or dispute the

amount of damages, the bar for such a showing is not high: a defendant's allegations are

meritorious if they contain even a hint of a suggestion which, if proven at trial, would constitute

a complete defense." *Carrasco v. Acropol Rest. Corp.*, 2019 WL 2325556, at *3-4 (S.D.N.Y. May 31, 2019) (quotation marks and citations omitted).

Defendant Jones argues he has a meritorious defense because he denies that he was deliberately indifferent to Plaintiff's medical needs and that his alleged conduct posed a risk of harm to Plaintiff.  In order to show deliberate indifference to his medical needs, Plaintiff must establish that his medical needs were objectively "sufficiently serious," and that Defendant Jones was "aware of, and deliberately indifferent to, those needs." *Ceparano v. Suffolk Cty. Dep't of Health*, 485 F. App'x 505, 507 (2d Cir. 2012) (citation omitted).  Defendant Jones contests both prongs, and argues that at least as to the second prong, he can provide testimonial evidence supporting his defense; namely, that he was not "actually aware of a substantial risk" of harm to Plaintiff as a result of his actions.  (ECF No. 92.)  If such evidence is credited, this will constitute a defense to Plaintiff's claim.  *Farmer v. Brennan*, 511 U.S. 825, 844 (1994) (explaining that because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment, "it remains open to the officials to prove that they were unaware even of an obvious risk to inmate health or safety"); *Tolliver v. Sidorowicz*, 714 F. App'x 73, 74 (2d Cir. 2018) (dismissing claim of deliberate indifference where the evidence showed the defendant lacked subjective intent to harm the plaintiff when she removed his cane because she believed the plaintiff was walking well without it).

Additionally, Defendant Jones argues that he has a defense of qualified immunity. Indeed, if given the chance, it is plausible that Defendant Jones could convince a jury that it was "objectively reasonable," *Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir.2003), for him to believe he had not acted with the requisite deliberate indifference when he removed Plaintiff's cane.

Accordingly, without making any decisions on the merits at this stage, the Court finds that Defendant Jones has met his burden to assert a meritorious defense solely for purposes of vacating the Certificate of Default.

Therefore, this factor weighs in favor of setting aside the Certificate of Default.

### c. Prejudice to Plaintiff

"To be considered prejudicial, vacatur of a default must result in tangible harm beyond mere delay." *McInnis USA Inc. v. Aggrecem Mech., LLC*, 2022 WL 3028980, at *2 (S.D.N.Y. Aug. 1, 2022). A plaintiff may demonstrate prejudice by showing "that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983) (quotation marks and citation omitted).

Here, there is no evidence that the delay amounts to any tangible harm to Plaintiff beyond delay itself. Moreover, numerous factors separate from Defendant Jones' default have contributed to delays in this action, including delays caused by Plaintiff filing numerous iterations of the complaint and delays caused by Plaintiff's transfer to a different facility. Additionally, only five months passed between the filing of the motion for default judgment and Defendant Jones making an appearance in this action, which counsels against a finding of prejudice here. *See Byrnes v. Yeats Constr. Mgmt., Inc.*, 2017 WL 4045484, at *4 (S.D.N.Y. Sept. 11, 2017) (finding no prejudice where a significant portion of the delay in the action was attributable to the plaintiff's failure to prosecute his claims in an efficient manner and only six months had passed since entry of the default).

Accordingly, this factor also weighs in favor of setting aside the Certificate of Default.

**d.  Weight of the Factors**

Keeping in mind the Second Circuit's strong preference for resolving disputes on the merits, I find that the "good cause" factors weigh in favor of setting aside the Clerk's Certificate of Default.  *See, Byrnes*, 2017 WL 4045484, at *7 (S.D.N.Y. Sept. 11, 2017) (finding that where the default was willful but was not prejudicial to the plaintiff and the defendant had asserted a meritorious defense, the "good cause" factors weighed in favor of vacating the certificate of default).

**CONCLUSION**

For the above reasons, Defendant's motion to vacate the Certificate of Default is granted.

**The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 92, and to vacate the Certificate of Default at ECF No. 83.  The Clerk of the Court is also requested to mail a copy of this order to Plaintiff.**

**SO ORDERED.**

DATED:        New York, New York
              March 7, 2023

                                        *Katharine H. Parker*
                                        KATHARINE H. PARKER
                                        United States Magistrate Judge